FILED

2026 Mar-20  PM 01:42
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| ALLEN MCMURRAY and CEDRIC SPENCER, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Case No.: 2:24-cv-00469-AMM |
| R&L CARRIERS SHARED SERVICES, LLC, | ) ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This case is before the court on a motion for summary judgment by defendant R&L Carriers Shared Services ("R&L"). Doc. 19. Because there are no disputes of material fact in this case, and R&L is entitled to judgment as a matter of law, the motion is **GRANTED**.

## I. BACKGROUND

This is an employment case brought by two African-American former R&L employees, Allen McMurray and Cedric Spencer. Doc. 1. They allege that R&L intentionally discriminated against them in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Civil Rights Act of 1866, 42 U.S.C. § 1981. *Id.* ¶¶ 25–38. The undisputed facts, taken in the light most favorable to Mr. McMurray and Mr. Spencer, are these:

Mr. McMurray and Mr. Spencer are longtime friends who often work together. *See* Doc. 18-1 at 6–9. In 2022, they began working at R&L as Mechanic Tractor Shop Class AX employees with three colleagues: Rondie "Bubba" Bradberry, Marvin Cobb, and Stephen Busby. *Id.* at 42; Doc. 18-6 ¶ 6. Their job duties generally consisted of repairing tractor trailers, maintaining fleet equipment, cleaning their workspace, and cleaning restrooms when asked. Doc. 18-1 at 38, 57; Doc. 18-2 at 35, 54. Mr. Cobb served as a "Lead Technician," meaning he had some level of supervisory responsibility over the group. Doc. 18-1 at 38; Doc. 18-6 ¶ 7; Doc. 18-8 ¶ 2. As Lead Technician, Mr. Cobb was supervised by Tim Carter. *See* Doc. 18-7 ¶ 3. Mr. Carter assigned all shop employees their tasks. Doc. 18-7 ¶¶ 3, 10. Mr. Cobb, Mr. Carter, Mr. Busby are White males, and Mr. Bradberry is an African-American male. Doc. 18-6 ¶ 6; Doc. 18-1 at 44.

Mechanic Tractor Shop Class AX employees worked in shifts. *See* Doc. 18-2 at 34. More or less, one group of mechanics worked during the day and one group worked at night. *See* Doc. 18-1 at 61; Doc. 18-2 at 34. Mechanics were allowed breaks during their shifts. *See id.* at 36; Doc. 18-1 at 41. While the mechanics' shifts sometimes overlapped, they often had no knowledge of what other mechanics did during their shifts. *See* Doc. 18-1 at 44.

Mr. McMurray and Mr. Spencer testified that R&L engaged in a host of discriminatory practices. For example, Mr. McMurray and Mr. Spencer testified that

Mr. Cobb segregated R&L's mechanic workshop—they testified that Mr. Cobb, while demonstrating where employees placed their toolboxes, said "Black guys over there [(on one side of the shop)] and [W]hite guys over here [(on the other side of the shop)]." Doc. 18-1 at 41; *see also* Doc. 18-2 at 49. They further testified that R&L required African American mechanics to clean bathrooms without ever requiring the same of White mechanics. Doc. 18-1 at 51; Doc. 18-2 at 54. They also testified that more taxing tasks, like moving heavy steel plates or replacing tractor trailer doors, were assigned only to African Americans. Doc. 18-1 at 44; Doc. 18-2 at 50–51. They further testified that R&L allowed White employees more frequent breaks than African American employees. *See* Doc. 18-1 at 44; Doc. 18-2 at 56–58. And they testified that they were denied training that R&L offered their White coworkers. *See* Doc. 18-1 at 72; Doc. 18-2 at 37–40.

Mr. McMurray and Mr. Spencer also testified that Mr. Cobb, their supervisor, was openly hostile towards African-Americans. They testified that Mr. Cobb made them feel unwelcome by displaying a Confederate Battle Flag on his Facebook page and on his truck. Doc. 18-1 at 50–51, 76; Doc. 18-2 at 45. And they also testified that Mr. Carter did nothing to remedy this alleged discrimination despite having knowledge of it. *See* Doc. 18-1 at 49–50, 177; Doc. 18-2 at 59–60.

Mr. McMurray worked at R&L for only twenty-five days, and Mr. Spencer worked at R&L for only thirty days. Doc. 18-6 ¶ 9. During those thirty days, each

plaintiff missed eight days of work. *See* Doc. 18-1 at 213–14; Doc. 18-2 at 162–63. The company's records indicate that each plaintiff failed to notify their supervisor of their absence on at least three occasions, though the plaintiffs each testified that they did not remember missing work. *See* Doc. 18-1 at 46, 216; Doc. 18-2 at 42–43; Doc. 18-6 at 19. R&L's company policy effects an automatic resignation when an employee misses three consecutive days of work without calling to notify their supervisor, so Mr. McMurray and Mr. Spencer both resigned in early August 2022. Doc. 18-6 ¶ 11; *id.* at 23. Their voluntary resignations were processed by the field maintenance manager, Scott Carroll. *See* Doc. 18-5 ¶ 2; Doc. 18-6 at 19–20.

Mr. McMurray and Mr. Spencer filed suit against R&L in April 2024. *See* Doc. 1. R&L moved for summary judgment. Doc. 19. That motion is fully briefed. Docs. 25, 28.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" that prove the undisputed facts, or "showing that the materials cited do not establish

4

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support [a] fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

A fact is "material" if it could affect the outcome of a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute about a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). That is because "there can be 'no genuine issue as to any material fact'" without evidence proving an element of a non-movant's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. "To defeat a motion for summary judgment, the nonmoving party may not rely on mere allegations[]" but must instead "raise significant probative evidence that would be sufficient for a jury to find for that party." *LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) (cleaned up). "[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Anthony v. Georgia*, 69 F.4th 796, 804 (11th Cir. 2023) (cleaned up).

The court must draw all available inferences in favor of the nonmoving party. *Matsuishita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Mr. McMurray and Mr. Spencer bring claims against R&L under Title VII, 42 U.S.C. § 2000e-2, and under 42 U.S.C. § 1981. Mr. Alfaro brings claims against Prudent under Title VII (42 U.S.C. § 2000e-2), and against Mr. Necessary under 42 U.S.C. § 1981. *See* Doc. 19 ¶¶ 27–44. The former provides that an employer may not "fail or refuse to hire or . . . discharge any individual, or otherwise [] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). And the latter provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," a "right[] protected . . . against impairment by nongovernmental discrimination." 42 U.S.C. § 1981(a), (c).

Title VII "outlaws employment discrimination because of race, color, religion, sex, or national origin," and Section "1981 prohibits employers from intentionally discriminating on the basis of race in employment contracts." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 943–44 (11th Cir. 2023) (cleaned up). "To prove a claim under either statute, a plaintiff can use direct evidence, circumstantial evidence, or both." *Id.* at 944.

6

"Direct evidence of discrimination is evidence, that, if believed, proves the existence of a fact in issue without inference or presumption." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1266 (11th Cir. 1999) (cleaned up). It is evidence "composed of only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of some impermissible factor." *Id.* (cleaned up).

In the absence of direct evidence, a plaintiff can carry their burden by demonstrating a "'convincing mosaic'" of circumstantial evidence that warrants an inference of intentional discrimination." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 n.6 (11th Cir. 2019) (en banc). This standard is decidedly broader than a "pretext inquiry" and instead asks if the plaintiff has "put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination." *Ismael v. Roundtree*, 161 F.4th 752, 762–63 (11th Cir. 2025) (cleaned up).

Separately, a plaintiff can attempt to satisfy the *McDonnell Douglas* balancing test to survive a motion for summary judgment against a claim of intentional discrimination. In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a burden-shifting framework in which the plaintiff makes a *prima facie* showing of discrimination by proving that they belong to a protected class and that they suffered an adverse employment action. 411 U.S. 792, 802 (1973). If the plaintiff makes that showing, the employer must then proffer a "legitimate, non-discriminatory reason" for their actions. *Id.* "[S]hould the defendant carry its burden,

7

the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination . . . ." *Lewis*, 918 F.3d at 1221.

### A. Direct Evidence

Mr. McMurray and Mr. Spencer offer two pieces of direct evidence to support their claims that R&L intentionally discriminated against them: the statement allegedly made by Mr. Cobb that R&L segregated its workshop based on race, and the Confederate Flag on Mr. Cobb's Facebook page and vehicle. Doc. 18-1 at 50–52, 76; Doc. 18-2 at 45, 49, 142.

R&L argues that Mr. McMurray and Mr. Spencer's evidence cannot prove intentional racial discrimination because they offer only Mr. Cobb's "stray remark during their orientation about segregated tool storage, and [Mr.] Cobb's display of the Confederate Flag outside work." Doc. 19 at 20. Mr. McMurray and Mr. Spencer do not respond to R&L's arguments. *See* Doc. 25 at 9–13.

Mr. McMurray and Mr. Spencer's direct evidence of discrimination fails to satisfy their burden for two reasons. *First*, Mr. Cobb was not a decisionmaker at R&L, so his comments alone are not sufficient to support a claim of discrimination. Mr. Cobb's title was "Lead Technician," Doc. 18-8 ¶ 2, but the undisputed evidence establishes that Mr. McMurray and Mr. Spencer received work assignments from Timothy Carter, the maintenance shop foreman, Doc. 18-7 ¶¶ 3, 10. Further, Mr. Carroll, Doc. 18-5 ¶ 2, was ultimately responsible for processing Mr. McMurray and

Mr. Spencer's voluntary resignation—not Mr. Cobb, Doc. 18-6 at 19–20. Mr. Cobb had no authority beyond supervising the tasks that Mr. Carter assigned to Mr. McMurray and Mr. Spencer; he was not a decisionmaker that could take any outcome-determinative actions against the plaintiffs. Doc. 18-7 ¶¶ 3, 10; Doc. 19 at 20.

*Second*, Mr. Cobb's alleged remark and display of the Confederate Flag bears no relation to Mr. Spencer and Mr. McMurray's later resignation. After discussing Mr. Cobb's remark at his deposition, Mr. McMurray said that he was "not able to say" whether Mr. Cobb's remark factored into his decision to resign. Doc. 18-2 at 49. Mr. Spencer similarly testified that no other racially insensitive remarks were directed at him during his thirty-day stint at R&L, and that he resigned for a myriad of reasons. *See* Doc. 18-1 at 50–51, 54. Notably, Mr. Cobb allegedly made his remark on the plaintiffs' first day of employment according to Mr. Spencer, Doc. 18-1 at 41, meaning that each plaintiff continued working afterwards for nearly a month.

As for Mr. Cobb's display of the Confederate Flag, Mr. Cobb's display of a flag does not directly prove the existence of intentional racial discrimination. The undisputed evidence shows only that Mr. Cobb displayed the flag on his truck and social media pages—that is not direct evidence that he intentionally discriminated against Mr. McMurray or Mr. Spencer. Neither Mr. McMurray nor Mr. Spencer

9

testified that Mr. Cobb displayed the flag in the R&L terminal. Doc. 18-1 at 75–76; *see* Doc. 18-2 at 45.

Accordingly, the court finds that the plaintiffs' direct evidence of intentional racial discrimination is insufficient to survive summary judgment.

**B. Circumstantial Evidence**

R&L next argues that it is entitled to summary judgment because the plaintiffs cannot satisfy the burden-shifting framework outlined in *McDonnell Douglas*. Doc. 19 at 21. R&L first argues that Mr. McMurray and Mr. Spencer cannot make out a *prima facie* case of discrimination because they resigned their employment and did not suffer an adverse employment action. *Id.* at 23. R&L then argues that the undisputed evidence shows that Mr. McMurray and Mr. Spencer were not denied any training, and that all the work that R&L assigned Mr. McMurray and Mr. Spencer was within their respective job descriptions. *Id.* at 24–26. And R&L finally argues that Mr. McMurray and Mr. Spencer received all breaks they were entitled to, and that they have not produced evidence that they were constructively discharged. *Id.* at 26–29.

The plaintiffs argue that six issues of triable fact exist, based on Mr. McMurray and Mr. Spencer's testimony. Doc. 25 at 10–11. They argue that summary judgment is not proper because they "are not required to show an adverse employment action in the traditional sense" but that some "discriminatory conduct

10

tended to deprive Plaintiffs of employment opportunities or adversely affected their status in the workplace, which Plaintiffs have clearly shown." *Id.* at 11. Mr. McMurray and Mr. Spencer argue that, because they testified that they were forced to do more arduous tasks than their White counterparts, they have satisfied their *prima facie* burden under *McDonnell Douglas*. *Id.* at 11–13.

To satisfy the first prong of the burden shifting framework in *McDonnell Douglas*, plaintiffs must show that they were members of a protected class. Mr. McMurray and Mr. Spencer are both African-American, and so they are members of a protected class. *McDonnell Douglas Corp.*, 411 U.S. at 802. Mr. McMurray and Mr. Spencer must then show that R&L subjected them to an adverse employment action. *See id.* They have attempted to do this in several ways.

*First*, Mr. McMurray and Mr. Spencer each testified that White mechanics did not perform some of the arduous tasks that Black mechanics performed, Doc. 18-1 at 44, 51; Doc 18-2 at 50–51, 54, that they were denied training, *see* Doc. 18-1 at 72; Doc. 18-2 at 37–40, and that White employees were given longer and more frequent breaks than African American employees, *see* Doc. 18-1 at 44; Doc. 18-2 at 56–58.

But the foundation for the plaintiffs' testimony with regard to the tasks of their comparators is lacking. Mr. McMurray and Mr. Spencer both testified that employees at R&L worked in shifts—certain employees worked at night, and certain employees worked during the day. *See* Doc. 18-1 at 61; Doc. 18-2 at 34. And when

11

the plaintiffs were not at work, they admit that they do not know who performed the tasks that they complain were only assigned to African Americans. Doc. 18-1 at 56 (Question: "[Y]ou don't know what the employees, [W]hite or [B]lack, did on the days or the times that you did not work at R&L, correct? You don't know what they did when you weren't there?" Answer: "No, I don't."); Doc. 18-2 at 53 (Question: "So you have no idea what—of your own personal knowledge and your own personal observations what [the other mechanics] did while you were still at home, right?" Answer: "No, sir."). Accordingly, Mr. McMurray and Mr. Spencer's assertions about disparate job assignments are speculative and exceed their own personal knowledge. These "unsubstantiated assertions" are insufficient to survive summary judgment. *Anthony*, 69 F.4th at 804.

*Second*, Mr. McMurray and Mr. Spencer contend that they were denied training offered to their White counterparts. But each plaintiff admits that he "met the qualifications" for the mechanic job he accepted, and Mr. Spencer admits that he never sought additional training while at R&L. Doc. 18-1 at 41–42; Doc. 18-2 at 36. Mr. McMurray, on the other hand, testified that he had two separate conversations with Mr. Carter about training, one of which took place while Mr. Spencer was present. Doc. 18-2 at 37–39. And Mr. McMurray admitted that, although he saw R&L employees "go into a room and sit at a computer," he never confirmed that they were receiving training. *Id.* at 42. Although Mr. McMurray did testify that other

12

employees said they received online training, *id.* at 41–42, his testimony is this respect is inadmissible hearsay because he testified to what someone else said and now seeks to use that person's out of court statement for the truth of the fact that the individual received training that he was denied, *see* Fed. R. Evid. 801. Even still, another coworker's statement is insufficient to support an inference that Mr. McMurray was denied training because of intentional racial discrimination.

Because Mr. Spencer never sought, nor was he denied, any training from R&L, training allegations cannot now form the basis for his claims. And Mr. McMurray's testimony is not admissible nor sufficient evidence that other employees received training that he requested and was denied on the basis of his race.

*Third and finally*, Mr. McMurray and Mr. Spencer contend that R&L gave White mechanics longer and more frequent breaks than African American mechanics received. *See* Doc. 18-1 at 44; Doc. 18-2 at 56–58. But the White coworker that the plaintiffs contend had longer and more frequent breaks than them was a smoker, Doc. 18-1 at 62, and neither Mr. McMurray nor Mr. Spencer smokes, *id.* at 62, 64. Aside from not receiving smoke breaks (that they did not need), the plaintiffs admit that they received all breaks that they were otherwise entitled to. Mr. Spencer was asked to "[i]dentify . . . any other breaks that [he] contend[s] African American employees at the Birmingham terminal were denied that [W]hite employees got

13

during [his] employment" other than his White coworker's smoke breaks. *Id.* at 64. He responded, "No, sir," *id.*, and indicated that he took every break he was entitled to under company policy, *id.* at 64–65.

Accordingly, undisputed evidence makes clear that the plaintiffs did not suffer an adverse employment action, and that they therefore cannot prove a *prima facie* case under the *McDonnell Douglas* framework.

Even assuming that plaintiffs could create a *prima facie* showing under *McDonnell Douglas*, R&L had legitimate, non-discriminatory reasons for terminating Mr. McMurray and Mr. Spencer's employment. It is undisputed that each plaintiff worked for R&L only about one month, that each plaintiff missed eight days of work, and that company records indicate that the plaintiffs completely "no-showed" on at least three of those days (though the plaintiffs testified that they did not recall "no-showing"). *See* Doc. 18-1 at 46, 216; Doc. 18-2 at 42–43; Doc. 18-6 ¶¶ 9–12. This evidence alone is sufficient to find that R&L had legitimate, non-discriminatory reasons for terminating Mr. McMurray and Mr. Spencer's employment and forecloses a determination that R&L's reasons for terminating plaintiffs' employment were merely pretextual.

And finally, there is no "convincing mosaic" of discrimination in this case. Mr. McMurray and Mr. Spencer's employment proceeded as one might expect: after failing to show up to work for many days without informing their employer, their

14

employer processed their voluntary resignation based on the terms of their employment contract. Indeed, this is the quintessential case of "a failure to put forward enough evidence for a jury to find for the plaintiff on the ultimate question of discrimination." *Ismael*, 161 F. 4th at 763 (cleaned up).

### C. Constructive Discharge

Both R&L and the plaintiffs make arguments about constructive discharge in their summary judgment briefing, *see* Doc. 19 at 27–29; Doc. 25 at 13–15, but Mr. McMurry and Mr. Spencer have no claim for constructive discharge in their complaint, *see* Doc. 1 ¶¶ 25–38. The complaint does not contain the word "constructive," nor the phrase "constructive discharge." *See generally* Doc. 1. In any event, the allegations in the complaint fall far short of stating a claim for constructive discharge. *See Bryant v. Jones*, 575 F.3d 1281, 1298–99 (11th Cir. 2009) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job." (cleaned up)). And in this Circuit, a plaintiff cannot "raise new claims at the summary judgment stage" by making arguments in a brief. *See Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). As such, the court may not grant summary judgment for or against a claim of constructive discharge.

15

## IV. CONCLUSION

For the foregoing reasons, summary judgment is **GRANTED** in favor of R&L and Count I of Mr. McMurray and Mr. Spencer's amended complaint is **DISMISSED WITH PREJUDICE**. A final order consistent with this opinion consistent with this opinion will be entered.

**DONE** and **ORDERED** this 20th day of March, 2026.

_____
**ANNA M. MANASCO**
UNITED STATES DISTRICT JUDGE